IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| IN RE MENTOR CORP. OBTAPE | * | MDL Docket No. 2004 |
| | | 4:08-MD-2004 (CDL) |
| TRANSOBTURATOR SLING PRODUCTS | * | |
| | | Case Nos. |
| LIABILITY LITIGATION | * | 3:07-cv-00101 (Stafford *et al.*) |
| | | 3:07-cv-00102 (Booth *et al.*) |
| | * | 3:07-cv-00130 (Dover *et al.*) |

O R D E R

This order should tie up some loose ends left over from the final pretrial conference in this action. At that pretrial conference, the Court heard from the parties on all pending motions and made certain rulings on those motions orally from the bench. Regarding several motions, the Court permitted the parties to submit follow-up briefs. Having reviewed those filings, the Court makes the following rulings.

**I.   Motion to Sever**

Mentor asks the Court to reconsider its denial of Mentor's motion to sever, or in the alternative, to certify the question to the Georgia Supreme Court (Doc. 298). Mentor's motion is denied. The Court previously consolidated these actions, finding that they should be combined for trial pursuant to Rule 42 of the Federal Rules of Civil Procedure. (Order, Mar. 3, 2010, Doc. 217) The Court does not find any change in circumstances that would warrant reconsideration of that order. Mentor repeats its previous argument that the Georgia punitive damages statute prevents the consolidated

trial of any action where more than one plaintiff seeks punitive damages. Thus, if two persons suffered injury at the same exact time from the same exact product defect, they must try those claims separately. Or, if a spouse has a claim for lost consortium as well as punitive damages, he cannot pursue that claim in the same trial as his spouse's related personal injury claim. Mentor seeks to place such restrictions on the Court's ability to manage its docket efficiently and fairly by pointing to a strained interpretation of Georgia's punitive damages statute, O.C.G.A. § 51-12-5.1(e)(1). That statute provides: "Only one award of punitive damages may be recovered in a court in this state from a defendant for any act or omission if the cause of action arises from product liability, regardless of the number of causes of action which may arise from such act or omission." Mentor reads this statutory provision to prevent multiple plaintiffs in a single action from recovering *one* award of punitive damages. The Court rejects Mentor's interpretation of the statute and finds that it does not prohibit a jury from making a *single* award of punitive damages in a single trial to multiple plaintiffs to share jointly. Nothing in the statute restricts such a joint award. Furthermore, allowing multiple plaintiffs to recover a single award jointly will not affect the amount or propriety of any such award. The jury will be informed that "punitive damages shall be awarded not as compensation to a plaintiff but solely to punish,

2

penalize, or deter a defendant." O.C.G.A. § 51-12-5.1(c). Therefore, the jury will know that its evaluation must focus on Mentor's conduct and not on the existence of multiple plaintiffs. Moreover, the alleged fact that Mentor has exhibited punitive conduct toward multiple plaintiffs will not unfairly inflate the punitive award given that other similar conduct evidence would be admissible on the issue of punitive damages even if those other victims are not named parties.

Curiously, Mentor cites to *Mack Trucks, Inc. v. Conkle*, 263 Ga. 539, 542, 436 S.E.2d 635, 638 (1993) in support of its argument, yet the facts of that case appear directly contrary to Mentor's position. A careful reading of *Mack Trucks* indicates that punitive damages were awarded against a truck manufacturer when a *husband and wife* brought a product liability action against the manufacturer, and the Georgia Supreme Court affirmed the $2 million punitive damages award. *Id.* at 539, 545; 436 S.E.2d at 636, 640. Other cases appear to have permitted multiple plaintiffs to seek a joint single award of punitive damages in a product liability case. *See Banks v. ICI Ams., Inc.*, 266 Ga. 607, 610-11, 469 S.E.2d 171, 175 (1996) (finding that plaintiffs—the parents and administrator of the estate of a child who died after ingesting rat poison—could seek punitive damages award under O.C.G.A. § 51-12-5.1). While the Georgia courts in these cases did not specifically address the question at issue here, their

3

implicit authorization of a joint, single award of punitive damages is more persuasive than Mentor's citations of authority, which include no citation to a single case addressing the issue directly or indirectly. For all of these reasons, the Court concludes that the "one award" provision of O.C.G.A. § 51-12-5.1(e)(1) permits a single, joint recovery of punitive damages by more than one plaintiff against a product liability defendant.

Mentor also argues that, based on the Georgia statute requiring consent of the parties prior to consolidation of trials under certain circumstances, "the Georgia legislature plainly could not have intended for O.C.G.A. § 51-12-5.1(e)(1) to allow multiple plaintiffs to recover punitive damages in a federal trial consolidated over the defendant's objection, when Mentor's objection to consolidation alone would prevent this type of multiple recovery in a state court involving the same claims." (Mentor's Mot. to Sever 5.) The Court rejects this argument. The issue of consolidation is procedural and thus the Federal Rules of Civil Procedure apply. The Court applied Federal Rule of Civil Procedure 42 in consolidating these actions for trial. The Court rejects Mentor's suggestion that the Georgia statute trumps this rule of procedure. Furthermore, as discussed above, consolidation here would not result in a "multiple recovery."

The Court also rejects Mentor's argument that allowing multiple plaintiffs in a single action to recover jointly one award of

4

punitive damages will deprive Mentor of a constitutionally fair trial. The Court is convinced that the jury can be properly instructed to assure that any award of punitive damages is based upon the appropriate standard as set forth under Georgia and federal law and that consolidation of the four Plaintiffs for trial will pass muster under the applicable United States Supreme Court precedent. As the Court previously explained, in making its punitive damages decision, the jury must focus on Mentor's conduct and not on the existence of multiple plaintiffs. Also, while a jury may not award punitive damages against a defendant to punish the defendant for harm to non-parties, a jury may consider whether the defendant's conduct risks harm to others in determining reprehensibility, so long as the trial court takes reasonable steps to ensure that the jury will not confuse the two concepts. *Philip Morris USA v. Williams*, 549 U.S. 346, 357 (2007). For all of these reasons and the reasons provided in the Court's order on consolidation, the Court denies Mentor's motion for reconsideration of the Court's denial of Mentor's motion to sever.

## II. Voluntary Device Reports

At the pretrial conference, the Court denied Mentor's Motion in Limine No. 14, which sought to preclude evidence of voluntary adverse event reports. Mentor appears to ask the Court to reconsider its decision to permit introduction of adverse event reports, whether or

5

not they pre-dated Plaintiffs' ObTape implantations. (Mentor's Supplemental Authority re Mots. in Limine 6.) The Court declines to reconsider this issue, and its denial of Mentor's Motion in Limine No. 14 stands. The Court adequately explained its rationale at the pretrial conference.

### III. Plaintiffs' Failure to Warn Theory

The Court previously observed that although Georgia law "imposes a continuing duty upon manufacturers to warn of a danger arising from a product after its sale or distribution," *Ford Motor Co. v. Reese*, 300 Ga. App. 82, 85, 684 S.E.2d 279, 284 (2009), the continuing duty to warn does not mean that Mentor had a continuing, post-implantation duty to warn Plaintiffs or their physicians about ObTape. As the Court noted at the pretrial conference, such a duty would be tantamount to a duty to recall, which the Georgia Court of Appeals expressly rejected in *Reese*. *Id.* at 84, 684 S.E.2d at 283. Rather, Mentor had a duty to warn Plaintiffs in this case prior to implantation of ObTape. As to what the Georgia Court of Appeals meant in *Reese* when it stated that product manufacturers still have a continuing duty to warn notwithstanding their holding in *Reese*, the Court reconciles these two principles to mean that a product manufacturer has a duty to warn *future* purchasers of unreasonable risks associated with its product even if it does not become aware of those risks until some date after it initially introduces the product

6

into the marketplace. However, under *Reese* this duty is not owed to previous purchasers. The Court finds no magic in the term "recall" as it is used by the Court in *Reese*. A "duty to recall" is simply a type of "duty to warn." To find that a duty to warn previous purchasers of a later discovered product defect exists under Georgia law cannot be reconciled with *Reese's* explicit holding that no such duty to inform previous purchasers of a later discovered defect, whether via recall or some other mechanism, is recognized in Georgia. Accordingly, the Court declines to adopt Plaintiffs' failure to warn theory to the extent it is inconsistent with this ruling.

**IV. Malpractice Suits or Claims Against Dr. Suzanne Bush**

At the pretrial conference, the Court denied Plaintiffs' Motion in Limine No. 5 (Doc. 252 6-7), which sought to exclude evidence that their expert Dr. Suzanne Bush was subjected to disciplinary action by the Florida medical board. The Court's ruling was based on its misunderstanding that Dr. Bush had been subjected to serious sanctions tantatmount to suspension or revocation of her medical license. The evidence submitted subsequent to the pretrial conference reveals that Dr. Bush entered into a Consent Agreement to settle an Administrative Complaint alleging malpractice unrelated to ObTape, a suburethral sling, or treatment of stress urinary incontinence. (Exs. A-C to Mentor's Supplemental Authority Regarding Mots. in Limine.) The Consent Agreement required Dr. Bush to pay a

7

$3,000 fine and $1,400 in costs and to attend five hours of continuing medical education. (*Id.*) It also provided that Dr. Bush would receive a Letter of Concern from the medical board. (*Id.*) There was no revocation or suspension of Dr. Bush's medical license. Under these circumstances, the Court concludes that evidence of the Administrative Complaint and Consent Agreement should not be admitted. It has no probative value except for possible impeachment, which is weak, and any probative value that it may have is substantially outweighed by the risk of unfair prejudice, confusion, and waste of time. Accordingly, the Court grants Plaintiffs' Motion for Reconsideration (Doc. 291), and Plaintiffs' Motion in Limine No. 5 (Doc. 252) is granted.

**V.   Recording of Foreign Expert Witness Testimony**

Plaintiffs intend to have certain witnesses who are from Europe–including former employees of Mentor—testify live at trial. Their testimony relates to most, if not all, of the cases that comprise this multidistrict litigation proceeding. Therefore, Plaintiffs seek permission to have their trial testimony recorded by video, so that they will have an option to introduce that testimony in future trials rather than incur the cost, and subject the witnesses to the inconvenience, associated with multiple trial appearances. The Court asked the parties to brief this issue, which they have done. The Court's Policy Regarding Electronic Devices in

Courthouses of the U.S. District Court for the Middle District of Georgia provides that electronic devices may not be used "to photograph, broadcast, or transmit judicial proceedings or to conduct audio or video recordings of judicial proceedings," except "[a]ny use of audio or video recording or transcription services or equipment other than by the official court reporters must be approved by the presiding judge." Thus, under the Court's policy, the Court may permit video recording of witness testimony. Neither the Judicial Conference of the United States nor the Eleventh Circuit Judicial Council precludes a district court from permitting such recording, so long as the recording is allowed by local rule. *See* Guide to Judiciary Policy vol. 10 ch. 4, *available at* http://jnet.ao.dcn/Guide_New/Vol_10_Public_Access_ and_Records/ Ch_4_Cameras_in_the_Courtroom.html (stating that judge may authorize recording in courtroom "for the presentation of evidence" or "for the perpetuation of the record of the proceedings," among other things). The Court finds that it is appropriate to permit videotaping of the testimony of Plaintiffs' foreign witnesses for use in the actions comprising the multidistrict litigation proceeding.

The Court notes that it must ensure that the recording "is done in a manner that will be consistent with the rights of the parties, will not unduly distract participants in the proceeding, and will not otherwise interfere with the administration of justice." *Id.*

9

Therefore, the Court must approve where the video recording equipment is placed. Accordingly, appropriate representatives of the parties shall report to the courtroom at 10:00 A.M. on Friday, May 28, 2010, or at some earlier date mutually agreed to by the parties and the Court, to demonstrate where the video recording equipment will be placed.

**VI. Trial Structure**

At the pretrial conference, the issue arose as to whether the punitive damages aspects of the trial would be bifurcated or trifurcated. Pretermitting whether this issue is procedural or substantive and thus governed by federal or Georgia law, the Court finds Georgia law on the issue instructive. The Georgia punitive damages statute provides: "In any case in which punitive damages are claimed, the trier of fact shall first resolve from the evidence produced at trial whether an award of punitive damages shall be made. . . . If it is found that punitive damages are to be awarded, the trial shall immediately be recommenced in order to receive such evidence as is relevant to a decision regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant in light of the circumstances in the case." O.C.G.A. § 51-12-5.1(d). Thus, under Georgia law, cases involving a claim for punitive damages must, at a minimum, be bifurcated. In some cases, however, the trial court may divide the trial into three separate

10

phases: the first on liability for compensatory damages, the second on the propriety of punitive damages, and the third on the amount of punitive damages. In deciding whether to trifurcate a trial, the trial court should consider "the potential prejudice to the parties, the complexity of issues and the potential for jury confusion, and the relative convenience, economy, or delay that may result" from admission of prior or subsequent similar acts that are relevant solely on the issue of punitive damages. *Webster v. Boyett*, 269 Ga. 191, 195, 496 S.E.2d 459, 463 (1998).

> It is the rare case where, due to the complexity of the issues or evidence, the trial court should divide the trial into three separate phases. First, although not completely devoid of purpose, a third phase expends limited judicial resources by requiring the judge and jury to hear evidence and render a verdict in three separate proceedings. Second, the liability issues, witnesses, and evidence on both compensatory and punitive damages often may not differ substantially, thus eliminating the desire for two separate phases on liability. Third, in routine cases where there is less likelihood of confusion, a limiting instruction may adequately protect the defendant from the prejudicial effect of the similar act evidence. Finally, the trial courts in most tort actions have been able to ensure a fair trial by applying the balancing test, despite their contrary rulings on when the evidence is admissible.

*Id.* at 196, 496 S.E.2d at 463-64.

Mentor argues for trifurcation, contending that certain evidence may be admissible only on the issue of whether punitive damages should be awarded and would not be admissible on the issue of whether compensatory damages should be awarded. Mentor maintains that allowing the jury to hear the punitive damages evidence as part of

11

the compensatory part of the trial will cause it undue prejudice and prevent it from receiving a fair trial. The Court rejects this argument. First, the Court is not convinced that substantial evidence will be introduced that goes solely to the issue of whether punitive damages should be awarded. It appears that most of the evidence that will be probative as to whether punitive damages will be awarded will also be relevant on Plaintiffs' compensatory damages claims. To the extent that certain evidence is admitted that is only relevant to the punitive damages claim, the Court finds that it can manage the trial in a manner that the jury will understand the limited purpose of any such evidence. The Court finds that trifurcation is not necessary in this case to assure that Mentor receives a fair trial, and all of the other pertinent factors weigh heavily in favor of bifurcation instead of trifurcation. Accordingly, the compensatory damages claims and the issue of whether punitive damages should be awarded will be tried in the first phase, and if the jury decides that punitive damages should be awarded, issues related to the amount of any punitive damages award shall be tried in the second phase.

## CONCLUSION

For the reasons set forth above, Mentor's Motion for Reconsideration of the Court's Order denying Mentor's Motion to Sever (Doc. 298) is denied, and the Court declines to certify the issue to

the Georgia Supreme Court.  The Court also declines to reconsider its denial of Mentor's Motion in Limine No. 14, and the Court declines to adopt Plaintiffs' failure to warn theory.  Plaintiffs' Motion for Reconsideration (Doc. 291) regarding Dr. Bush is granted, and Plaintiffs' Motion in Limine No. 5 (Doc. 252) is granted.  The Court will permit the use of video cameras in the courtroom during trial for the limited purpose of preserving evidence offered by Plaintiffs' foreign witnesses.  Finally, the trial will be bifurcated and not trifurcated.

IT IS SO ORDERED, this 18th day of May, 2010.

        S/Clay D. Land
          CLAY D. LAND
UNITED STATES DISTRICT JUDGE